## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOSEPH MURRAY, APPELLANT.

*Assault in the second degree — what acts justify a conviction thereof — when a man running through the street with an open jack-knife in his hand is guilty of disorderly conduct.*

Upon a trial had under an indictment charging the defendant with an assault in the second degree, it appeared that he was seen by an officer running through the streets with an open jack-knife in his hand, the handle of which was about two and a half inches long, and the blade of about the same length, attempting to escape from a police officer, who requested the complainant to assist him in securing the defendant. The complainant thereupon got behind a wagon, and as the defendant approached jumped out in front of and reached for him, whereupon the defendant struck out at the complainant three times with the open jack-knife before the complainant's hand had actually been placed upon him.

*Held*, that the defendant was properly convicted of an assault in the second degree, because of his unnecessary attempt to stab the complainant.

That the fact that subsequently the complainant drew his club, and in order to protect himself struck the defendant, did not condone the original assault made by the latter.

That while a man may run through the streets, holding in his hand an open jack-knife, when pursued by an officer, without being guilty of disorderly conduct, as prescribed in section 1458 of chapter 410 of the Laws of 1882, yet the circumstances attending such acts may be such as to constitute "threatening behavior" within the provisions of that act.

APPEAL by the defendant from a judgment of the Court of General Session of the Peace, convicting the defendant of assault in the second degree on September 28, 1888.

*Ambrose H. Purdy*, for the appellant.

*McKenzie Semple*, for the respondent.

BARRETT, J.:

Murray's case clearly came within the fourth subdivision of section 218 of the Penal Code, namely, willfully and wrongfully assaulting another by the use of a weapon or other instrument or thing likely to produce grievous bodily harm. Murray was seen by an officer running through the streets with an open jack-knife in his hands. . The handle of this knife was about two and one-half inches long and the blade . was of about the same length. The officer attempted to stop him whereupon Murray sought to stab the officer, making three lunges at him with the open knife. There was no defense upon the facts. I mean that no testimony was offered by the prisoner. He relied and now relies upon the point of law that the officer had no right to arrest him without a warrant. While it must be conceded that there was no evidence from which the officer could reasonably infer the commission of a felony, yet there was, in my judgment, enough to go to the jury upon the question of disorderly conduct. Section 1458 of the consolidation act (Laws 1882, chap. 410) declares that every person (in the city of New York) who shall use any *threatening, abusive or insulting behavior*, with intent to provoke a breach of the peace or *whereby a breach of the peace may be occasioned*, shall be guilty of disorderly conduct. By the same act (§ 277) the members of the police force are authorized to arrest, without warrant, any person who shall commit or threaten or attempt to commit in the presence of such member, or within his view, any breach of the peace *or offense directly prohibited by act* of the legislature or by any ordinance of the city. The question then is whether Murray's conduct came within the definition of disorderly conduct given in section 1458. It, is true that a man may run through the streets without being guilty of threatening behavior, even when pursued lawfully or unlawfully by an officer. It is equally true that he may lawfully hold in his hand an open jack-

knife.   But the circumstances attending these acts may be such as to bring the case within the statute.

In other words, a man may run through the streets wielding an open knife in such a manner as to threaten the public peace. Whether he did so in the present instance, whether the prisoner's "behavior" was "threatening," whether it tended to provoke a breach of the peace, whether it was such that a breach of the peace might be occasioned thereby, were questions to be determined by the jury upon all the facts and circumstances of the case.

There was not enough here to warrant the court in directing the jury one way or the other as matter of law.   The evidence, though uncontradicted, was susceptible of two views or inferences, and, upon the whole, I think the question was properly left to the jury as one of fact, under appropriate instructions.   Such instructions were given, and the prisoner cannot complain of their fairness.

It is also contended that the arrest was not, in fact, made upon the ground of disorderly conduct.   This, however, is a pure assumption.   The jury, too, have found the other way, in substance, that the prisoner was lawfully arrested by one (an officer) in whose presence he was committing a misdemeanor.

The conviction can properly be sustained upon another ground. It seems that Murray, when stopped, was running away from one Mitchell, also an officer.   That officer requested the complainant Holahan to assist him in securing Murray.   Holahan then got behind a wagon and, as Murray approached, jumped out in front of and reached for him.   This was all that Holahan did prior to Murray's assault.

Upon the undisputed facts, therefore, Murray lunged at Holahan three times with the open jack-knife before even a hand had actually been placed upon him.   Holahan managed to retreat; and to escape being stabbed, he subsequently succeeded in tripping Murray, who fell, and the arrest followed.

What transpired afterwards, namely, Holahan's drawing his club and striking Murray to protect himself, as he said, against the still open knife, did not condone the original assault.

That assault cannot be justified, even upon the theory of an illegal arrest.   Holahan had, apparently, no weapon.   He had not then drawn his club.   He simply attempted, with open hands, to

seize Murray's person.  If he thus erred in doing what he supposed to be his duty, Murray had no right to use greater force than was essential to maintain his freedom.  He was certainly responsible, on the facts stated, for the unnecessary attempt to stab, and for that wrongful and willful act he was justly convicted.

The judgment should, therefore, be affirmed.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment affirmed.